(No. 43024.—

The Will County Board of Review *et al.*, Appellants, *vs.* The Property Tax Appeal Board of the Department of Revenue *et al.*, Appellees.

*Opinion filed May 27, 1971.*

Louis R. Bertani, State's Attorney, of Joliet, (Joseph Sayer, of counsel,) for appellant Will County Board of Review.

Glenn E. Miller, of Lockport, for appellants Board of Education of School District No. 90, Will County and Lockport Township Park District.

McKeown, McKeown, Fitzgerald, Zollner, Buck & Sangmeister, of Joliet, (Joseph C. Fitzgerald, of counsel,) for appellants Town of Lockport and Board of Library Directors of Lockport Township.

William J. Scott, Attorney General, of Chicago, (Francis T. Crowe, Assistant Attorney General, of counsel,) for appellee Property Tax Appeal Board.

Allen S. Lavin, of Chicago, (Vincent P. Flood, of counsel,) for appellee Metropolitan Sanitary District of Greater Chicago.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The Will County Board of Review (Board of Review) brought this action under the Administrative Review Act in the circuit court of Will County to review a decision of the Property Tax Appeal Board of the Department of Revenue (Appeal Board) which decreased the assessed valuation of certain property in Will County owned by the Metropolitan Sanitary District of Greater Chicago (Sanitary District). The complaint named as defendants the Appeal Board, the Sanitary District, the County Clerk and the Treasurer and *ex officio* County Collector of Will County. Several tax levying units joined as plaintiffs and also sought leave to intervene as parties plaintiff. The circuit court confirmed the decision of the Appeal Board, and the Board of Review and some of the tax levying units have appealed directly to this court. 43 Ill.2d R. 302.

The procedures for the assessment of property for taxation in Will County commence with the local assessor, whose product is subject to revision—first by the county supervisor of assessments and then by the county board of review. (Ill. Rev. Stat. 1967, ch. 120, pars. 576, 589.) Until 1967 the assessment process terminated there. In that year the General Assembly created a State agency to review property tax assessments made by local officials. That agency is the Property Tax Appeal Board of the Department of Revenue, which consists of three members appointed by the Governor. The statute which created the agency provides: "In any county other than a county of over 1,000,000 population  *  *  *, any taxpayer dissatisfied with the decision of a board of review as such decision pertains to the assessment of his property for taxation purposes, or any taxing body that has an interest in the decision of the board of review on an assessment made by any local assessment officer, may,  *  *  * appeal such decision to the Property Tax Appeal Board for review. Such tax-

payer or taxing body, hereinafter called the appellant, shall file a petition with the clerk of the Property Tax Appeal Board, setting forth specifically the facts upon which he bases his objection to the decision of the board of review, together with a statement of the contentions of law which he desires to raise, and the relief he requests." (Ill. Rev. Stat. 1967, ch. 120, par. 592.1,) The clerk of the Appeal Board is required to mail a copy of the petition to the board of review whose decision is being appealed. Ill. Rev. Stat. 1967, ch. 120, par. 592.2.

The Appeal Board is authorized to establish by rule "an informal procedure for the determination of the correct assessment of property which is the subject of an appeal." (Ill. Rev. Stat. 1967, ch. 120, par. 592.2.) The statute provides that "A hearing shall be granted if any party to the appeal so requests, and, upon motion of any party to the appeal or by direction of the Property Tax Appeal Board, any appeal may be set down for a hearing, with proper notice to the interested parties." (Ill. Rev. Stat. 1967, ch. 120, par. 592.3.) Decisions of the Appeal Board are to "be based upon equity and the weight of evidence and not upon constructive fraud," and they are "subject to review under the provisions of the Administrative Review Act." Ill. Rev. Stat. 1967, ch. 120, par. 592.4.

Before the Will County Board of Review, the Sanitary District sought reductions in the assessed valuation of eight parcels of property. After a hearing, the Board of Review sustained the original assessment in each case. The Sanitary District then filed eight "Petitions for Real Property Assessment Appeal" with the Property Tax Appeal Board. Notice of a hearing was sent to the Sanitary District, with carbon copies to the Will County Supervisor of Assessments and the State's Attorney, and to "State Attorneys, Board of Review, Supervisors of Assessment, [and] County Treasurers" through the Supervisor and the State's Attorney.

The State's Attorney of Will County represented the re-

spondents at the hearing, at which extensive testimony was taken and exhibits were introduced. Thereafter the Appeal Board made its findings and rendered its decisions which reduced the assessed valuation on seven of the eight parcels in the total amount of $1,311,795.

The Board of Review then filed its complaint under the Administrative Review Act, naming as defendants the Appeal Board, the Sanitary District, the County Clerk, and the Treasurer and *ex officio* County Collector. Several tax levying bodies joined in the complaint, and also sought leave to intervene as parties. The complaint attacked the correctness of the ruling of the Appeal Board and also asserted that "the statute under which this decision was rendered is unconstitutional and void because the same makes no provision for the Taxing bodies affected to be notified of said proceedings and said Taxing bodies  *  *  *  were not notified and had no knowledge of the proceedings  *  *  *." Both the Appeal Board and the Sanitary District moved to dismiss the complaint on the ground that the Will County Board of Review was not a "party" within the meaning of the Administrative Review Act, had no appealable interest and no statutory authority to institute an action under the Administrative Review Act. They also resisted intervention by the local taxing bodies on the ground that they were not parties to the proceedings before the Appeal Board and therefore lacked standing to intervene. The court denied the motions to dismiss, granted the motions to intervene, and on the merits confirmed the decisions of the Appeal Board.

The Board of Review and some of the taxing bodies have appealed. The Appeal Board and the Sanitary District moved to dismiss the appeal on the grounds, first, that the Board of Review had lacked statutory authority to institute the administrative review action and so was without authority to appeal from the judgment entered in that action, and, second, that leave to intervene in the administrative review action had been improperly granted to the taxing

bodies, who, having erroneously been made parties, could not appeal.

These motions were denied by this court on the grounds (1) that the authority of the Board of Review to appeal follows by necessary implication from the provisions of the statute which require that the Board of Review be notified of the filing of the petition with the Appeal Board and that the decision of the Appeal Board be certified to the Board of Review. (Ill. Rev. Stat. 1967, ch. 120, pars. 592.2, 592.4), and (2) that under section 26.1 of the Civil Practice Act (Ill. Rev. Stat. 1967, ch. 110, par. 26.1) the taxing bodies were properly permitted to intervene in the adminstrative review action.

On the merits, we consider first the contention of the intervening taxing bodies that they were denied their statutory right to notice of the proceedings before the Appeal Board. That contention is based upon section 111.3 of the Revenue Act which provides: "A hearing shall be granted if any party to the appeal so requests, and, upon motion of any party to the appeal or by direction of the Property Tax Appeal Board, any appeal may be set down for hearing, with proper notice to the interested parties." (Ill. Rev. Stat. 1967, ch. 120, par. 592.3.) "Any reasonable interpretation of the phrase 'interested parties' " the argument runs, "would require that taxing bodies being deprived of $1,311,795.00 in assessed valuation and a yearly tax loss based on then current tax rates of more than $63,000.00 ought to be considered 'interested parties.' "

The statute provides that when a taxpayer files a complaint with the Appeal Board, a copy is to be sent to the board of review whose decision is being appealed. (Ill. Rev. Stat. 1967, ch. 120, par. 592.2.) The proceedings before the Appeal Board are thus initially between the taxpayer and the board of review. There was, however, a readily available method by which the taxing bodies could have become parties to the proceeding before the Appeal Board if they

had desired to do so. The Appeal Board's Rule 6 provides: "a. Any taxpayer whose property tax assessment has been made or reviewed by the Board of Review, and who is aggrieved by such assessment on review, or any taxing body having a revenue interest in such property may become a party to the appeal. b. Such taxpayer or taxing body may become a party to the appeal by filing * * * with the Clerk of the Board a Request to Intervene * * *, signifying his or its intention to become a party to the appeal, within 20 days after the appeal is commenced." In this case the taxing bodies made no effort to intervene and so did not become parties entitled to notice under section 111.3 (par. 592.3).

They also argue that if the amendments creating the Appeal Board do not require that notice be given to them, those amendments are unconstitutional because they violate due process. This argument is not persuasive. We know of no authority which holds that due process requires a State to give its local taxing bodies a right to be heard with respect to the valuation of a taxpayer's property for taxing purposes. If local taxing bodies do not have a constitutional right to be heard, they do not have a constitutional right to notice. And since one taxpayer is not entitled to notice of proceedings affecting the assessed valuation of another taxpayer's property, the taxing bodies can not assert any vicarious right to notice on behalf of other taxpayers.

Thus we come to the contention that the Appeal Board's decisions reducing the assessed valuations on the seven Sanitary District parcels were incorrect. We consider first the Appeal Board's finding No. 4, which concerns the assessed valuations of the five parcels of unimproved real property which vary in size from 7.12 to 115.40 acres. They consist largely of property constituting the bed of the Des Plaines River. Four of the parcels are 95% under water; all five are subject to a public easement for navigation, and the disputed 1967 assessed valuations of the five ranged from $500 to

$2000 per acre. The Appeal Board reduced these valuations to $100 per acre. The appellants contend that "there is no competent substantial evidence to support the findings and orders of the Property Tax Appeal Board." We do not agree.

Robert A. Wallace, an attorney for the Sanitary District, testified concerning a "comparative value" statement which he had prepared and which was received in evidence. The statement indicated the location of each parcel adjacent to the Sanitary District properties, its total acreage, its improvements, if any, its total 1966 and 1967 assessed valuations, and its 1967 per acre assessed valuation. This statement demonstrated that adjacent unimproved parcels, including property used for farming and other more economically valuable purposes, had 1967 assessed valuations ranging from $43 to $1650 per acre.

No evidence was offered challenging the accuracy of Wallace's testimony or statement. The Appeal Board is not bound by formal rules of evidence. (Ill. Rev. Stat. 1967, ch. 120, par. 592.2.) Wallace was not an incompetent witness, and the appellants' contention that all evidence of comparative values "requires a recent, bona fide voluntary sale of property similar in locality and character to that in question" is unsound as applied to the assessment of property for taxation. The Appeal Board properly found, based upon the testimony of the township assessor, that in arriving at the assessed value of these parcels no consideration was given to the fact that the land was subject to a public easement for navigation.

The appellants also contend that the reduction in assessed valuation of the improvements on two other parcels is both factually and legally unsupportable. The improvements in question consist mainly of retaining walls along a segment of an extension of the sanitary and ship canal. The history of the extension of the canal is set forth in *Sanitary District of Chicago* v. *Rhodes* (1944), 386 Ill. 269. Briefly summarized, the construction of the original sanitary canal,

completed in 1899, led to a significant improvement in sanitary conditions in the area served by the Sanitary District. The legislature deemed it desirable, therefore, to expand this area. Originally the Sanitary District encompassed only the city of Chicago and a few adjoining communities. By legislation enacted in 1903, Calumet and Blue Island, on the south of the original district, were added to it. To service this addition, it became necessary to construct an auxiliary canal. Such construction, however, would necessarily sever the old Illinois and Michigan canal which served as a major artery of water transportation from Chicago to the south, and which was required to be kept intact by Federal legislation. Thus, the legislation enacted in 1903 also provided that the Sanitary District should first extend its main channel to provide an alternate means of water transportation.

Completed in 1908, the extension commences at the old control works of the main canal, located north of Lockport, and extends some four miles. The ground level dropped markedly in this stretch and resulted in a swift current which could be utilized for the production of electrical power. Therefore, at a point about two miles from the old controlling works, an electrical power plant was built on the west edge of the canal. The power plant is owned by the Sanitary District, and the electricity generated by it is sold to various cities as well as used by the Sanitary District for its needs.

The retaining walls involved in this appeal extend from the old control works to the power plant. At the hearing before the Appeal Board, John C. Guillou, chief waterway engineer in the Department of Public Works and Buildings of the State of Illinois, testified that the extension and the retaining walls are not needed by the Sanitary District for sanitation purposes. His testimony was corroborated by Richard Lanyon, an engineer of waterways control for the Sanitary District. There was no evidence to the contrary.

Guillou also testified that the old Illinois and Michigan

canal would not be able to handle "the tremendous amount of tonnage" and types of barges in present use on the sanitary and ship canal. Lanyon also testified that in 1967 the power plant operated at a deficit of some $13,000. This evidence was also uncontradicted.

The township assessor of Lockport Township assessed the retaining walls at $1,498,530. Assuming the assessment correctly reflected the full, fair market value of the improvements, the Appeal Board reduced that assessment to $249,755 and found: "That the 'improvements' * * * are found by the Board to have been made 50% for shipping purposes and 50% for the purpose of electrical production. * * * We further find that * * * the 50% attributable to the electric power production shall be further reduced to 33⅓%. This reduction is made because of the drastically reduced amount of water diverted into the channel which has reduced the ability of the District to produce electricity; * * *."

In *Sanitary District of Chicago* v. *Rhodes* (1944), 386 Ill. 269, the court reaffirmed its prior holding in *Sanitary District of Chicago* v. *Young* (1918), 285 Ill. 351, that the extension of the main canal was not exempt from taxation as "public grounds * * * used exclusively for public purposes." (Ill. Rev. Stat. 1967, ch. 120, par. 500.9.) The opinion in *Rhodes* noted that while the extension was built for navigation purposes and was encumbered by a public easement for navigation, it was then used primarily for the sanitation purposes of the inhabitants within the District, not the public generally, and for the production of electrical power which was sold by the District for a considerable profit. The assessed value sustained in the *Young* case was determined by capitalizing at 5% the net income of the District from the sale of electricity.

In our opinion, the reductions in assessed valuation of the improvement granted by the Appeal Board were both legally and factually proper. It was appropriate for the Ap-

peal Board to admit and consider evidence on the economic value of the extension and improvements to the Sanitary District in its sanitation and electrical production functions. The uncontradicted evidence demonstrated that such extension and improvements are not needed by the District for its sanitation purposes, and that the operation of the power plant, once a profitable enterprise (see *Sanitary District of Chicago* v. *Gifford* (1913), 257 Ill. 424; *Sanitary District of Chicago* v. *Young* (1918), 285 Ill. 351), resulted in a deficit in 1967.

The judgment of the circuit court of Will County is affirmed.

*Judgment affirmed.*