ROBERT C. HALL, Plaintiff-Appellee, *v.* ILLINOIS PROPERTY TAX APPEAL
BOARD *et al.*, Defendants-Appellants.

Third District    No. 80-447

Opinion filed July 23, 1981.

Roland D. Cobb, Assistant Attorney General, of Springfield, and Chris L. Fredericksen, Assistant State's Attorney, of Peoria, for appellants.

Robert C. Hall, of Peoria, for appellee, *pro se*.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff Robert C. Hall filed a complaint for administrative review of the decision of defendant Property Tax Appeal Board of the State of Illinois (hereinafter the Board) denying his petition for certain exemptions. After a hearing on the merits, the circuit court of Peoria County reversed the Board and remanded the cause for determination of certain facts. After the Board rendered its findings, plaintiff filed a second complaint and the court again reversed the Board's decision. Defendant Peoria County Board of Review, who rendered the initial decision in this matter, joins the Board in appealing the court's decision.

The facts out of which this litigation evolves are not in dispute. In December 1974, plaintiff purchased a personal residence from his father for $45,000. At that time, the home had an assessed valuation of $22,750, based upon a fair market value of $45,500. Plaintiff testified that the home was in poor condition and presented photographs to verify his conclusion. He stated he thereafter substantially remodeled the home by gutting and redoing its first floor; installing new cabinets, plumbing, and wiring; and painting and landscaping. At the hearing, it was stipulated that the cost of this renovation was $20,039.51. In January 1977, the assessed valuation of the home was increased to $29,560, based upon a fair market value of $88,680.

After this increase in valuation, plaintiff filed an application for two property tax exemptions. The first was the homestead improvement exemption, which then provided:

"In counties with less than 1,000,000 inhabitants, a homestead improvement exemption pursuant to Article IX, Section 6 of the 1970 Constitution limited to an annual maximum of $15,000 in actual value when that property is owned and used exclusively for a residential purpose upon demonstration that a proposed increase in assessed value is attributable solely to a new improvement of an existing structure. The amount of the exemption shall be limited to the actual value added by the new improvement up to an annual maximum of $15,000 and shall continue for 4 years from the date the improvement is completed and occupied." (Ill. Rev. Stat. 1977, ch. 120, par. 500.23—2.)

The second was the maintenance and repair exemption, which then provided:

> "In counties containing less than 3,000,000 inhabitants, maintenance and repairs to residential real estate in an amount not to exceed $7,500 in any 10 year period shall not increase the assessed valuation of such real property. For purposes of this Section, work shall be deemed repair and maintenance when it (1) does not increase the square footage of improvements but is limited to work performed for the purpose of prolonging the life of the property, with existing improvements, or keeping such property in a well maintained condition; and (2) employs materials, such as those used for roofing or siding, whose value is not greater than the replacement value of any materials being replaced by such materials. This Section shall not be construed to require an assessment increase in any case in which such increase would not have been required prior to the effective date of this amendatory Act of 1977." (Ill. Rev. Stat. 1977, ch. 120, par. 501h—1.)

After the Peoria County Board of Review refused to grant the two exemptions, plaintiff appealed to the Board.

During the subsequent hearings by the Board, plaintiff introduced evidence of the condition and renovation of his home. Gary Matthews, a real estate broker, testified that, while the home's fair market value approached the $88,680 assigned by its assessor, $19,050 of that value was attributable to improvements and $8,450 of that value was attributable to repairs. Robert Potter, assessor of the city of Peoria, testified that the increase in valuation was not due to any improvements or repairs made by plaintiff but rather stemmed from a general increase for the entire neighborhood. This increase was based upon a "sales ration study" for the area, and he had never seen plaintiff's home nor had any knowledge of the improvements and repairs. Robert Thiemann, chairman of the Board of Review, offered essentially the same testimony, adding that the property had been conservatively valued. After the Board affirmed the denial of the exemptions, plaintiff appealed the decision pursuant to the provisions of the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*).

On administrative review, the trial court reversed the Board and remanded this cause for a determination of the classification, and effect on valuation, of the improvements and repairs. The Board found that the improvements and repairs had together increased the value of the property by $27,500, but that none of this work resulted in the increase in assessed valuation. Plaintiff again appealed, and the trial court again reversed the Board and granted the maximum exemptions allowable under the above provisions.

■■ Our function on administrative review is to determine whether the Board has acted within and according to the provisions of the statute creating it, and whether or not there is evidence to support its decision. *E.g., People ex rel. Thompson v. Property Tax Appeal Board* (1974), 22 Ill. App. 3d 316, 317 N.E.2d 121, *cert. denied, appeal dismissed* (1975), 422 U.S. 1002, 45 L. Ed. 2d 666, 95 S. Ct. 2623.

■■ Considering first whether the Board acted according to its statutory mandate, we note that it is an agency created by statute (Ill. Rev. Stat. 1977, ch. 120, par. 592.1 *et seq*.) to review property tax assessments made by local officials. (See *Will County Board of Review v. Property Tax Appeal Board* (1971), 48 Ill. 2d 513, 515, 272 N.E.2d 32, 34.) As an administrative agency, it has authority to construe statutory provisions in making decisions and determinations. (Accord, *Sugden v. Department of Public Welfare* (1960), 20 Ill. 2d 119, 169 N.E.2d 248.) The initial question before us is whether the Board correctly construed the statutory provisions at bar.

■■ The primary benchmark in statutory construction has been thus set forth by our supreme court:

> "The primary rule in the interpretation and construction of statutes is that the intention of the legislature should be ascertained and given effect. (*People v. Price*, 257 Ill. 587, 593.) The legislative intent should be sought primarily from the language used in the statute. Where the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature. (*Weiss Memorial Hospital v. Kroncke*, 12 Ill. 2d 98, 105; *Belfield v. Coop*, 8 Ill. 2d 293, 307.) It is never proper for a court to depart from plain language by reading into a statute exceptions, limitations or conditions which conflict with the clearly expressed legislative intent. (*People v. Boreman*, 401 Ill. 566, 572; *Wall v. Pfanschmidt*, 265 Ill. 180, 190-191.) * * *." (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84, 256 N.E.2d 758, 764.)

Beyond our responsibility to seek the intent of the legislature primarily from the language used in the statute, we are bound to strictly construe a statute granting tax exemptions on property in favor of taxation. (*E.g., Christian Action Ministry v. Department of Local Government Affairs* (1978), 74 Ill. 2d 51, 383 N.E.2d 958.) We now turn to the two provisions.

The statutory provision granting the homestead improvement exemption provides in pertinent part that the exemption is allowed "upon demonstration that a proposed increase in assessed value is attributable *solely* to a new improvement of an existing structure." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 120, par. 500.23—2.) In reversing the Board, the trial court held that if any *portion* of any proposed increase in assessment

is justified by reason of improvements or repairs, such portion qualifies for the exemption to the extent of the statutory maximum.

■■ "Solely" has been defined as meaning "as the only one or ones," "exclusively or only," or "merely" (The Random House Dictionary of the English Language 1354 (unabr. ed. 1966).) Seeking the intent of the legislature from the language of the statute, the increase in assessed valuation must be attributable exclusively to a new improvement. If only a portion of the increase is to the improvement, then such an increase cannot be due solely to the improvement and the exemption must be denied.

We quarrel not with plaintiff's persuasive argument that the exemption is of extremely limited value in an age of currency debasement and price inflation; however, "[t]here is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imparts." (*Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139-40, 361 N.E.2d 585, 587.) If a rule of apportionment is to be made, it must come from the legislature. Interestingly, when the provision was amended effective January 1, 1979, the language at bar was retained. See Ill. Rev. Stat. 1979, ch. 120, par. 500.23—2.

■■ Plaintiff further contends that an increase in value stemming from both improvements and repairs would defeat the exemption. As the increase in assessed valuation at bar does not equal the increase due to both improvements and repairs, this is an abstract question which cannot affect the decision herein. If an opinion on a question of law cannot affect the result as to the parties or controversy in the case before it, a court should not resolve the question merely for the sake of setting a precedent to govern potential future cases. *E.g., Bluthardt v. Breslin* (1979), 74 Ill. 2d 246, 384 N.E.2d 1309.

The statutory provision prohibiting an increase in assessed valuation due to maintenance and repairs provides the statutory meaning of those terms. The provision states that the work must not "increase the square footage of improvements" and "employs materials * * * whose value is not greater than the replacement value of any materials being replaced by such materials." Ill. Rev. Stat. 1977, ch. 120, par. 501h—1.

Having defined and interpreted the provisions, we now determine whether the Board's decision was contrary to the manifest weight of the evidence. In so doing, we must be mindful that the burden is on the person claiming the exemption to prove clearly and conclusively that he is entitled to one. *People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 264 N.E.2d 4.

Considering first the homestead improvement exemption, we note that plaintiff does not contest the $88,680 fair market value of his home upon which its assessed valuation was based. At the hearing, the cost of the collective improvements and repairs was stipulated to be $20,039.51

and plaintiff introduced testimony and an affidavit indicating these increased the home's fair market value by $27,500. Assuming, *arguendo*, that this increase was exclusively the result of the improvements, and not in any part the result of repairs, there was an appreciation in value of $15,680 not attributable to the renovation. Under these circumstances, we cannot say the increase in assessed value is due solely to the improvements. Therefore, we do not find the Board's decision regarding this exemption to be contrary to the manifest weight of the evidence.

■■ Considering next the maintenance and repair exemption, plaintiff introduced the same testimony and affidavit indicating the repairs upon the home increased its fair market value by $8,450, and there is no reason to dispute this figure. The statute, however, precisely specifies when work is deemed maintenance and repair. Neither at the original hearing, nor on remand, did plaintiff establish that the work constituted maintenance and repair under the statute. The record is devoid of any indication of either the square footage or the replacement value criteria. While plaintiff's repairs may indeed fall within the purview of the statute, it would be conjecture to so conclude. Therefore, we do not find the Board's holding with regard to this exemption was contrary to the manifest weight of the evidence either.

Because the Board's holdings were not against the manifest weight of the evidence, the trial court erred in reversing the Board's decision. Accordingly, the judgment of the circuit court of Peoria County is reversed and its order of June 20, 1980, instructing the Peoria County Treasurer to issue a tax refund to plaintiff, is vacated.

Judgment reversed; order vacated.

SCOTT, P. J., concurs.

Mr. JUSTICE HEIPLE, dissenting:

Robert C. Hall, the harassed homeowner in this case, bought his home in December 1974 for $45,000. At the time of the purchase, the home was in poor condition. Hall substantially improved the home by renovation, remodeling and repairs. The cost of this work exceeded $20,000.

In January 1977, after completion of the renovation, the assessor for the city of Peoria increased the fair market value figure on the house to $88,680. This compares with the 1974 fair market value figure of $45,500. In other words, an increase in value of almost 95%.

As authorized by statute, Hall filed an application for both the homestead improvement exemption and the homestead maintenance and repair exemption. The Peoria County Board of Review denied Hall's

petition. He then appealed to the Property Tax Appeal Board of the State of Illinois (the Board).

During the subsequent hearings held by the Board, the Peoria City Assessor testified that the increase in valuation was not due to any improvements or repairs made by Hall, but rather stemmed from a general increase for the entire neighborhood. He testified that the increase was based upon a "sales ration study" for the area. He had never viewed Hall's home, nor had any knowledge of the improvements and repairs. However, other evidence at the hearings adduced the fact that $19,050 of the home's increased value was attributable to the improvements made by Hall and $8,450 attributable to repairs. Regardless, the Board affirmed the denial of the exemptions. Hall appealed.

The Circuit Court of Peoria County reversed the Board and remanded for further specific findings as to the renovation and its effect on fair market valuation. On remand, the Board found that the improvements and repairs had together increased the value of the property by $27,500, but curiously found that *none* of this work resulted in the increase in assessed valuation. Hall again appealed, and the circuit court again reversed the Board. The maximum exemptions permitted under the statute were granted to the tenacious taxpayer.

The Property Tax Appeal Board of Illinois and the Peoria County Board of Review brought instant appeal.

In reversing the trial court, the majority renders the exemption statutes a nullity. Under the rubric of "plain meaning" the majority construes the statute so hypertechnically as to defeat the obvious legislative intent to provide not only relief but incentive to individuals to renovate their aging homes. Such legislative provision was intended to combat the blight of decay in older urban residential areas.

In our judicial analysis we should certainly start with the plain meaning of the words of a statute. However, words are not islands in meaningless juxtaposition. The statute must be read as a whole and with a view towards legislative intent. Courts have traditionally considered the consequences of alternative statutory interpretations. (*Dignan v. Midas-International Corp.* (1978), 65 Ill. App. 3d 188.) Where exquisite adherence to a perfectly precise literal definition of a word would result in absurdity, we should adopt an interpretation which would render the statute reasonable and wholesome. *People ex rel. Simpson v. Funkhouser* (1944), 385 Ill. 396; *People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305.

Hall's home before the renovation had a fair market value of $45,500; after the renovation, the fair market value increased to $88,680. Plaintiff's testimony indicated that the collective improvements and repair increased the home's fair market value by $27,500. Simple subtraction reveals that $15,680 of the increase was not attributable directly to the

renovation. Therefore, the majority reasons, since the increased value is not due solely to the improvements, the exemption must be denied. In this case, the city assessor increased the value of *all* the homes in the neighborhood. This was done according to a fixed rate for all the homes. The present condition of each dwelling, the improvements or lack thereof were *not* considered by the city in arriving at the new valuation figure. While a municipality may properly increase valuations according to some rational formula, such increase should not defeat a homeowner's lawful right to take advantage of legislative encouragement for home repair and improvement. We should not permit this blanket increase in valuation by the city of Peoria to defeat the exemption rightly earned by this homeowner.

Taxpayer Hall, after all, is concerned with the valuation placed on *his* house. The valuations placed on the other houses are of interest only for purposes of comparison. Perhaps the other valuations were improperly increased? We do not know, since those valuations were not taken to court. Hall's valuation *is* before the court. And the simple point is that with regard to Hall's property, his improvements and repairs resulted in an increase in the fair market value of his home of $27,500. His claims for a homestead improvement exemption and a repair exemption under the statute were given no efficacy by either the Peoria County Board of Review or the Property Tax Appeal Board of the State of Illinois. The trial court, however, gave him relief. In reversing the trial court, the majority converts the tax exemption statutes to effectual nullities premised on the interpretation and construction of the statute that exemptions are allowed only if the increase in assessed value is attributable *solely* to a new improvement. In other words, if 10 cents of the increased value of one's home is due to inflation, then the taxpayer's claim to a home improvement exemption must be disallowed since it cannot be demonstrated that the increase in value is due *solely* to the improvements. Ho hum. The majority further finds that the taxpayer's evidence as to repairs and the maintenance was insufficient. Again, I disagree.

I agree with the taxpayer. I think that he abundantly demonstrated his entitlement to both exemptions. I would affirm the decision of the circuit court.