CATHRYNE ROBERSON, by her Brother, Next Friend and Guardian, Benjamin Isaac, Plaintiff, v. M.J. LIU *et al.*, Defendants (John C. Ryan, Attorney at Law, Contemnor-Appellant).

Fifth District No. 5—87—0801

Opinion filed May 8, 1990.

WELCH, J., specially concurring.

John C. Ryan, *pro se*, and Michael F. Dahlen, both of Feirich, Schoen, Mager & Green, of Carbondale, for appellant.

Cook, Shevlin, Keefe & Ysursa, Ltd., of Belleville (Bruce N. Cook, of counsel), for Cathryne Roberson.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, and Judge & Knight, Ltd., of Park Ridge (William O. Martin, Jr., and Martin D. Hoke, of counsel), for *amicus curiae* Illinois Association of Defense Trial Counsel.

JUSTICE GOLDENHERSH delivered the opinion of the court:

The question before this court, in what appears to be a tangential discovery dispute in a medical malpractice action, in reality involves the integrity of the entire discovery process in the State of Illinois, the applicability of the discovery rules as rules of procedure and not mere advisory suggestions for conduct in the development of a cause of action prior to trial, and the ability of the judiciary to make these rules of discovery practical and effective in the context of intensely adversarial litigation. In this cause, a trial judge was faced with a violation of the spirit and intent of discovery as mandated by our supreme court and responded appropriately.

The system of discovery contained in our supreme court rules (107 Ill. 2d R. 201 *et seq.*) establishes a comprehensive framework for the revelation of evidence and matters leading to the discovery of admissible evidence. The hallmarks of this system are liberality of discovery

wherein these rules are to be interpreted in favor of disclosure of information and, concurrently, a restrictive interpretation of the scope of those privileges which still exist by statute or by decision of a court of review. Another hallmark of this system is its comprehensiveness, for the spirit and intent of our rules of discovery mandate that development of information lead to informed and intelligent analysis of a cause of action in all its aspects and informed, intelligent resolution of that cause either by settlement or trial. All corners of a cause of action are to be illuminated by the light of knowledge.

The comprehensiveness of this system is further indicated by rules governing the discovery process from the initiation of a cause of action through trial. As befits any system that deals in general rules of behavior, both mandatory and prohibitive, that are applied to complex factual scenarios, our discovery system also lodges a wide scope of discretion in the trial court. It is charged with the responsibility to oversee the discovery process, regulate it, and impose sanctions of varying degree when the rules of that process have been violated. Finally, and focusing on the matter directly at issue in this cause, the discovery process is exclusive. The decision of *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952, rendered by the Appellate Court for the First District, directly addresses this question and rules in favor of the exclusivity of our discovery processes.

What the trial court faced in this case was a challenge to all of these aspects of our discovery system. We conclude that the trial court's actions upholding the spirit, intent, and letter of the discovery rules were appropriate. For reasons we state later, we vacate the actual finding of contempt entered by the trial court.

Attorney John C. Ryan represented Dr. M.J. Liu, defendant in a medical malpractice action brought on behalf of plaintiff, Cathryne Roberson, by her brother, next friend and guardian, Benjamin Isaac, against Dr. Liu, Belleville Anesthesia Associates, Ltd., and Memorial Hospital. On January 9, 1985, attorney Ryan traveled to San Antonio, Texas, to take a sworn statement from Eileen MacKenzie, a nurse who had been present during, and assisted Dr. Liu in, the surgery during which plaintiff sustained the injuries for which she brought suit. Nurse MacKenzie had been an employee of the defendant hospital at the time of plaintiff's surgery. Prior to taking Nurse MacKenzie's statement, Ryan did not notify plaintiff of his intention to do so, nor did Ryan utilize any of the discovery procedures authorized by supreme court rule to obtain the statement.

On June 12, 1987, plaintiff filed a motion to strike defendant Dr.

Liu's answer and enter default judgment against him since defendant had failed to produce, pursuant to plaintiff's request to produce filed September 15, 1983, the statement of Nurse MacKenzie. Defendant responded that Nurse MacKenzie's statement had not been taken at the time plaintiff filed her request to produce, but that it had since been provided to plaintiff. On November 2, 1987, the circuit court of St. Clair County denied plaintiff's motion to strike defendant Liu's answer and enter default judgment, finding no continuing duty upon defendant to supplement its response to plaintiff's request to produce.

Although there is no report of proceedings contained in the record on appeal, the trial court's order of November 2, 1987, recites that plaintiff made an oral motion for sanctions against defendant for taking a statement from Nurse MacKenzie without first obtaining authorization from plaintiff. The trial court granted this motion, finding that the information obtained by defendant from Nurse MacKenzie was privileged pursuant to the physician-patient privilege, which must, the trial court reasoned, include within its purview a nurse-patient privilege when that nurse is acting in her professional capacity and assisting or acting as agent of the physician in the treatment of the patient. Relying upon *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952, decided June 26, 1986, the trial court further held that *ex parte* communications outside authorized discovery channels are prohibited between an attorney and a party's treating nurse just as they are between an attorney and a party's treating physician. Thus, the court found that the *ex parte* statement taken by attorney Ryan from Nurse MacKenzie was improper and adjudged attorney Ryan in contempt.

The parties' briefs and arguments and the *amicus curiae* brief of the Illinois Association of Defense Trial Counsel present a number of issues for this court to address: whether the physician-patient privilege should be extended to other health professionals, in this instance, a nurse; the status of *ex parte* conferences; the extent of a plaintiff's waiver of physician-patient privilege by filing of suit; and the sufficiency of the evidence supporting the instant contempt finding. We begin our consideration of the issues posed by the parties with an examination of the discovery context in which this controversy arose.

■ As noted by our supreme court in addressing the mandatory nature of criminal rules of procedure in *People v. Wilk* (1988), 124 Ill. 2d 93, 529 N.E.2d 218, the rules promulgated by the supreme court are, in fact, rules, and not advisory suggestions for conduct of the lower courts and the bar. As the legislative intent of rules and statutes is necessarily a part of those enactments, we interpret *Wilk* to

order the intent of applicable rules of procedure be followed as well as the letter. By analogizing the supreme court's position in *Wilk* to civil rules, the spirit and intent of the discovery rules are mandatory for all participants in the discovery process. The next question before this court is whether those discovery rules apply to the facts of this cause.

■ The exclusivity and broad application of these rules of discovery was succinctly addressed in *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952, *appeal denied* (1987), 113 Ill. 2d 584, 505 N.E.2d 361, *cert. denied* (1987), 483 U.S. ___, 97 L. Ed. 2d 738, 107 S. Ct. 3232, in the context of *ex parte* contact between a plaintiff's treating physician and a defendant's counsel. The *Petrillo* court held that such *ex parte* contact is not authorized by the rules, noting that the structure and supervision authority inherent in those rules serve to protect various societal interests such as the confidentiality and fiduciary nature of the physician-patient relationship. We specifically adopt *Petrillo* and proceed to the next question before this court, whether *Petrillo* applies to the case at bar.

■ We hold that *Petrillo* does apply to the instant case and that the holding of *Petrillo* was properly applied by the trial court to this nurse when acting in her professional capacity and assisting a doctor in treatment of a patient. We conclude that such application of *Petrillo* is necessary in order to give its specific holding and its articulation of the intent of our discovery process a practical effect. *Petrillo*, applied to this case, is also in accord with the ethical statements of nursing embodied in the Nightingale Pledge, which states:

"I Solemnly Pledge Myself Before God And In The Presence of This Assembly:

To pass my life in purity and to practice my profession faithfully.

I will abstain from whatever is deleterious and mischievous, and will not take or knowingly administer any harmful drug.

I will do all in my power to maintain and elevate the standard of my profession, and will hold in confidence all personal matters committed to my keeping, and all family affairs coming to my knowledge in the practice of my profession.

With loyalty will I endeavor to aid the physician in his work, and devote myself to the welfare of those committed to my care." (This pledge was formulated in 1893 by a committee of which Mrs. Lystra E. Gretter, R.N., was chairman.)

Such application of *Petrillo* advances the public policies of confidentiality in the doctor-patient relationship and disclosure by the regulated and supervised discovery process rather than unregulated, open-

ended and surreptitious *ex parte* contacts. To hold otherwise will allow *ex parte* contacts to do violence both to the doctor-patient relationship and our State's discovery processes.

Application of *Petrillo* is also in accord with the development of its holdings. The court in *Ritter v. Rush-Presbyterian-St. Luke's Medical Center* (1988), 177 Ill. App. 3d 313, 532 N.E.2d 327, cited *Petrillo* in barring the defendant medical center from communicating *ex parte* with and calling as its witnesses plaintiff's treating physicians who were also on defendant's staff. *Yates v. El-Deiry* (1987), 160 Ill. App. 3d 198, 513 N.E.2d 519, held the trial court's failure to bar a doctor's testimony after *ex parte* communication constituted reversible error, again citing *Petrillo*.

The court in *Karsten v. McCray* (1987), 157 Ill. App. 3d 1, 509 N.E.2d 1376, addressed the issues of waiver of physician-patient privilege and *ex parte* communications together. That court authorized barring on the basis of *Petrillo* a treating physician who had *ex parte* communications with the defendant's counsel. Its analysis and application of *Petrillo* stated:

> "The *Petrillo* court held that the public policy in protecting the confidences of the physician-patient relationship strongly favored control over a defendant's right to interview a plaintiff's treating physician. [Citation.] The court stated that this public policy was reflected in the code of ethics adopted by the medical profession and the fiduciary relationship which exists between a patient and his treating physician. [Citation.] *Although the court recognized that by filing a lawsuit, a plaintiff implicitly consents to his physician releasing medical information related to the condition he has placed at issue, it stated that this implicit consent is necessarily limited to the release of relevant information pursuant to court-authorized discovery.* [Citation.] *The court concluded that any discussions between defense counsel and a plaintiff's treating physician should be conducted pursuant to the rules of formal discovery only.* [Citation.]

We believe that the reasoning and holding of *Petrillo* is sound, and we adopt it here. While *Petrillo* did not expressly state that the fruits of such unauthorized interviews should be barred from being introduced, allowing such testimony to stand would render the *Petrillo* holding hollow and meaningless. We therefore further hold that barring the testimony of a plaintiff's treating physician is an appropriate sanction to protect the physician-patient privilege from defense interviews outside formal discovery. While an order barring the testimony or evi-

dence resulting from such unauthorized conferences would not remedy the breach of trust addressed by *Petrillo*, it would nevertheless be an appropriate sanction to protect the patient's confidences and to preclude such conferences from taking place, which was in fact the goal sought by that court." (Emphasis added.) 157 Ill. App. 3d at 13-14, 509 N.E.2d at 1383-84.

Defendant urges us to limit the application of *Petrillo* to physicians only, noting accurately that the Illinois courts applying that case have done so to physicians. In this cause, we address the question whether the *Petrillo* doctrine may be properly applied to a health professional other than a physician who, in a professional capacity, has assisted a physician in treatment of a plaintiff. We hold that *Petrillo* should be applied to that health professional, in this instance a nurse.

Just as "no man is an island" (John Donne), no physician acts alone in the discharge of professional, fiduciary duties to a patient. To note this reality and apply rules consistent with those applied to physicians gives practical effect to *Petrillo*. This assures and strengthens the public policies of confidentiality and fiduciary duty in the physician-patient relationship and disclosure of information by the regulated and supervised discovery process rather than uncontrolled and surreptitious *ex parte* conferences.

■■ ■ The result of the application by the trial court of the *Petrillo* doctrine is the judgment of contempt that is specifically before us in the instant case. "Contempt of court has been generally defined as conduct calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute." (*In re Estate of Melody* (1969), 42 Ill. 2d 451, 452, 248 N.E.2d 104, 105.) While there are different types of contempt—direct, indirect, civil, criminal—they all have this in common, and it is this element which we find missing in the instant case. The actions taken by respondent in this cause occurred prior to the issuance of the *Petrillo* opinion. Prior to that opinion one could argue that the discovery process might not apply to the facts at bar. Given these circumstances, we hereby vacate the finding of contempt entered against John C. Ryan. While the trial court had the authority to impose sanctions in this case (see Supreme Court Rule 219 (107 Ill. 2d R. 219)), the delineation of prohibited conduct in this case was not sufficiently clear to justify imposition of criminal contempt.

By our vacation of the finding of contempt imposed by the trial court we in no way intend to diminish the mandatory character of the discovery rules, nor the broad range of discretion given to the trial

court to regulate the discovery process by means of sanction. (See Supreme Court Rules 219, 220 (107 Ill. 2d Rules 219, 220).) The result in the instant appeal is unique due to the fortuitous timing of events in this cause.

For the foregoing reasons, we vacate the order of the circuit court of St. Clair County.

Finding vacated.

RARICK, J., concurs.

WELCH, J., specially concurring:

In the interest of judicial restraint, I must specially concur. It is axiomatic that a reviewing court should not consider questions or contentions which are not essential to the determination or final disposition of the cause before it, nor should a reviewing court consider a question or contention where the result will be the same no matter how such question or contention is decided. (*City of Chicago v. Cohen* (1977), 49 Ill. App. 3d 342, 344, 364 N.E.2d 335, 337.) Yet the majority does exactly that.

The only issue before this court on appeal is whether the trial court erred in adjudging appellant, John C. Ryan, guilty of contempt for taking an *ex parte* statement from a nurse who treated plaintiff. In so ruling, the trial court held that the physician/patient privilege includes within its purview a nurse/patient privilege which is protected from *ex parte* discovery in a medical malpractice case under *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952.

The majority properly holds that the finding of contempt was in error and must be vacated because the actions taken by appellant which the trial court found to be contemptuous occurred prior to the decision in *Petrillo*. Thus, there was no case law prohibiting *ex parte* communications between an attorney and a party's treating physician. Furthermore, there was no statutory or case law recognizing a nurse/patient privilege, nor was there any case law construing the physician/patient privilege as including a nurse/patient privilege. Thus, at the time appellant took Nurse MacKenzie's statement, he was not acting in contravention of any statute, case law, supreme court rule or order of court. That the trial court thought appellant acted improperly in taking Nurse MacKenzie's statement *ex parte* does not lead to a finding of contempt unless the record also reflects that appellant acted with intent to embarrass, hinder or obstruct the trial court in

its administration of justice. (See *People v. Wolf* (1987), 162 Ill. App. 3d 57, 514 N.E.2d 1218.) The majority properly found that this element was missing from the instant case. That is all that is necessary for the disposition of this case.

However, the majority goes far beyond what was necessary to decide this case. The majority takes this relatively simple case, involving no complex or novel issues of law, and characterizes it as one involving "the integrity of the entire discovery process in the State of Illinois, the applicability of the discovery rules as rules of procedure and not mere advisory suggestions for conduct in the development of a cause of action prior to trial, and the ability of the judiciary to make these rules of discovery practical and effective in the context of intensely adversarial litigation." (198 Ill. App. 3d at 333.) The majority then goes on to adopt the ruling in *Petrillo* and, worse yet, to extend the decision in *Petrillo* to include *ex parte* communications with nurses as well as doctors. In fact, the majority extends *Petrillo* to any "health professional other than a physician who, in a professional capacity, has assisted a physician in treatment of a plaintiff." (198 Ill. App. 3d at 338.) It is obvious that this holding was not necessary to the decision of this case and does not affect the decision herein.

If an opinion on a question of law cannot affect the result as to the parties or controversy in the case before it, a court should not resolve the question merely for the sake of setting a precedent to govern potential future cases. (*Hall v. Illinois Property Tax Appeal Board* (1981), 98 Ill. App. 3d 824, 828, 424 N.E.2d 375, 379.) Moreover, a court may not speak authoritatively upon questions not involved in the litigation, and expressions of opinions upon extraneous matters necessarily lack binding force. *Superior Coal Co. v. O'Brien* (1943), 383 Ill. 394, 406, 50 N.E.2d 453, 459.

In *Sleeth v. Illinois Department of Public Aid* (1984), 125 Ill. App. 3d 847, 850, 466 N.E.2d 703, 706, the court held that if certain procedures are found to violate a statute, it is unnecessary to consider whether those procedures might be unconstitutional if they were allowed by statute. Questions as to the constitutionality of the procedures were deemed to be abstract questions which were not properly reviewable.

In *Yale Development Co. v. Andermann* (1976), 37 Ill. App. 3d 33, 39, 344 N.E.2d 701, 707, it was held that whether the court was correct in viewing the relationship of the parties as a joint venture was not essential to the determination of the case because the decision turned on other factors. Thus, that aspect of the trial court's decision was not reviewed.

*Bejda v. SGL Industries, Inc.* (1979), 73 Ill. App. 3d 484, 489-90, 392 N.E.2d 38, 43, is particularly apposite to the case at bar. In that case, plaintiffs' complaint was dismissed as a sanction for failure to comply with the court's order to file an amended bill of particulars. The appellate court found that this was too drastic a sanction and reversed. Both parties filed petitions for rehearing, and a supplemental opinion was issued denying those petitions. In their petition for rehearing, plaintiffs argued that their complaint stated a cause of action and asked the court to rule on whether the reasoning of a certain supreme court decision should be applied to their case. The court held, however, that no substantive products liability law was involved in the dismissal order and therefore the principle of the supreme court case was simply not relevant to the issues presented on appeal. Thus, the court held, there was no reason to consider the question of its applicability to the allegations of plaintiff's complaint.

Similarly, in the case at bar, the wisdom or propriety of the *Petrillo* decision and its applicability to this case involving a nurse are simply not relevant to the issue presented on appeal. It should not have been addressed by the majority and, although I concur wholeheartedly in the result reached by the majority, I cannot concur in its opinion.