CHRYSLER CORPORATION, Plaintiff-Appellant, *v.* ILLINOIS PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees.

Second District   No. 77-541

Opinion filed March 14, 1979.

Elmer C. Rudy and Karl C. Williams, both of Williams, McCarthy, Kinley, Rudy & Picha, of Rockford, for appellant.

John H. Maville, State's Attorney, and Johnson, Johnson, Tobin & Ramon, both of Belvidere, and Flanagan, Bilton & Brannigan, of Chicago (Gregory Lawton and Paul J. Bargiel, Assistant Attorneys General, of counsel), for appellees.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Plaintiff taxpayer Chrysler Corporation (hereinafter Chrysler) brought an action under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), for a review of a decision of the Illinois Property Tax Appeals Board concerning real property tax valuations made by Boone County. The trial court affirmed the decision of the Board and Chrysler has appealed.

This case, concerning the 1972 tax assessment of the Chrysler assembly plant in Belvidere, has a long and complex history. Because of the large number of different appraisal and assessment figures involved, it seems advisable to begin with brief definitions of certain terms. In this opinion, total value, appraised value, full value and cash value are all used to refer to the actual value of the plant.

Although changes in total value will result in changes in assessed value, this case involves a dispute over the total value of the plant and not one concerning how the assessed value was calculated from that total value. With this in mind, we have intentionally omitted any direct reference to specific figures for assessed value; all of the dollar amounts in the following opinion refer to total value.

In 1969 Boone County entered into a contract with Cole-Layer-Trumble Company (hereinafter CLT) to reappraise all of the real property in Boone County on the basis of its value on January 1, 1970, for use in making the 1971 assessment. Pursuant to this contract, CLT assigned Basil Byer to supervise the reappraisal of approximately 12,000 parcels of land in the county. A separate appraisal report was prepared on the Chrysler assembly plant, showing a total building cash value of $16,461,922 and a full land value of $1,275,600, making a total value of $17,737,522. Dissatisfied with this appraisal, the Boone County Board of Review asked CLT to review its work and also asked the Illinois Department of Local Government Affairs to make an independent appraisal. Subsequently, Nick Ferguson, the senior industrial appraiser for CLT, concluded that the plant had a total building value of $19,682,110, a full land value of $1,364,500, and a total value of $21,046,610, and William Townsley, an industrial appraiser for the Department of Local Government Affairs, concluded that the buildings had a total value of $27,387,800, the land a value of $1,364,500, and the combination a total value of $28,752,300.

The Boone County Board of Review made an assessment for 1971 reflecting the $28,752,300 figure fixed by Mr. Townsley. Subsequently the Board decided to increase the assessment of the plant for 1972, on the basis that the full value of the property as of January 1, 1972, was $36,363,600. This conclusion was not the result of any new appraisals or on

any significant improvements to the property in question but was based on testimony as to the initial cost of the plant and on a calculation of value on a square-foot basis from a manual provided by the Department of Local Government Affairs.

Chrysler contended that this increase was unwarranted and appealed to the State Property Tax Appeal Board, asking for a reduction of the assessed valuation to reflect a total valuation of $21,046,618. Defendant, Community School Unit District #100 also appealed to the State Property Tax Appeal Board, contending that the assessment should be raised to reflect a value of $72,000,000. The Board held a hearing on December 12 and 13, 1973. Depositions from Mr. Byer and Mr. Ferguson were admitted into evidence. Mr. Townsley appeared and testified. John Rodge of the Chrysler tax department also submitted his own appraisal, which concluded that the total value of the property in question was $23,349,757 as of January 1, 1972. Fred Shappert also testified before the Board, estimating that it had cost at least $54,000,000 to build the plant in 1964 and that the value of the plant in 1972 was considerably higher. However, Mr. Shappert admitted that he was not a professional appraiser and was not familiar with the various methods used by professional appraisers.

On April 2, 1975, the State Property Tax Appeal Board rejected the appraisals by CLT, Townsley, Shappert and the tax department of Chrysler "due to lack of documentation and an absence of presentation and analysis of factual and relevent data," and upheld the County Board of Review's decision.

On appeal, under the Administrative Review Act, the circuit court reversed and remanded to the State Board with instructions to consider the evidence presented, together with any additional evidence the parties might wish to present. (Chrysler Corp. v. State Property Tax Appeal Board, 17th Jud. cir., No. 74-Tx-2.) The Board held a new hearing on April 22, 1975, at which time Chrysler presented the testimony of Guy Romito of Mid-America Appraisal and Research Corp. Mr. Romito testified that he had used two different methods of valuation of this property; the comparison sales approach and the reproduction cost approach. In using the reproduction cost approach Mr. Romito estimated the reproduction cost of the plant to be $66,671,619, less physical depreciation of $7,800,579, and economic obsolescence of $34,145,482 for a total cash value of $24,641,000. Combined with a land value of $1,032,000, this cost approach resulted in a total property value of $25,673,000. Using the comparison approach, Mr. Romito investigated sales of other properties comparable to the property in question. He found a number of sales of large plants in other areas and chose four which he felt were particularly comparable. This comparison led to an

estimation of a total value of $22,000,000. Mr. Romito concluded that the comparison approach should be given more weight and made a final estimate of a total value of $23,000,000.

The Property Tax Appeal Board held a third hearing on January 15, 1976, at which time defendant school board presented the testimony of Joseph Kuehnle. Mr. Kuehnle basically agreed with Mr. Romito's estimation of the reproduction cost of the plant but only allowed $4,519,000 for physical depreciation and nothing at all for functional or economic obsolescence, resulting in a finding of a total reproduction cost of $61,051,000. Mr. Kuehnle testified that he did not consider comparable sales to be a valid approach to valuation in this situation because, in his opinion, the Chrysler assembly plant was a single purpose or special purpose property having value only as an automobile assembly plant, and there were no comparable sales of automobile assembly plants to be examined. Mr. Kuehnle made no independent examination of the other properties discussed by Mr. Romito but concluded on the basis of the latter's report that they were not comparable to the Chrysler plant. He indicated that while the plant could be sold as a general industrial building, it would be at a "sacrifice price" and that he "didn't consider that to be a fair criteria of value." The Property Tax Board decision was based primarily upon Mr. Kuehnle's testimony, with some adjustments for increased depreciation. The Board found the total cash value of the property in question to be $56,000,000.

Chrysler's argument on appeal focuses on Mr. Kuehnle's reason for his exclusive reliance on the reproduction cost minus depreciation method: namely, his characterization of the plant as special purpose property. Chrysler contends that this characterization caused Mr. Kuehnle to both erroneously emphasize the reproduction cost method and to misuse the method by not allowing a sufficient figure for functional obsolescence.

The primary issue before us is whether Mr. Kuehnle's method of valuation, particularly his classification of the property as special purpose property, was incorrect as a matter of law. If it were incorrect, the Board's decision reflecting Mr. Kuehnle's method was also incorrect and must be reversed.

■■ We recognize that the findings of an administrative agency are *prima facie* correct in a case such as this (*Kellogg Switchboard & Supply Corp. v. Department of Revenue* (1958), 14 Ill. 2d 434, 153 N.E.2d 45), and that a court should not intervene in a case where property has been assessed higher or lower than it should have been through a mere error of judgment on the part of the administrative agency. (*People ex rel. Frantz v. M.D.B.K.W., Inc.* (1966), 36 Ill. 2d 209, 221 N.E.2d 650.) In the instant case we are faced with potential use of an improper method of valuation

rather than with a mere difference of opinion as to the market value of a particular piece of property. Our courts have actively intervened when the issue is one of improper method. (See *Consolidation Coal Co. v. Property Tax Appeal Board* (1975), 29 Ill. App. 3d 465, 331 N.E.2d 122.) A court may also act in a situation where an assessment is so grossly excessive as to be tantamount to constructive fraud. (See *People ex rel. Rosewell v. Dee El Garage, Inc.* (1977), 51 Ill. App. 3d 382, 366 N.E.2d 585; *People ex rel. Frantz v. M.D.B.K.W., Inc.*) Whether there is a fraud on account of excessive valuation of property for taxation will depend largely on the circumstances of each particular case. (*People ex rel. Schmulbach v. City of St. Louis* (951), 408 Ill. 491, 97 N.E.2d 252.) The value of approximately $56,000,000 set on the plant by the Property Tax Appeal Board and the over $60,000,000 set on the plant by Mr. Kuehnle are both more than twice that of any of the other qualified appraisers. Thus, if an improper method was used, this is clearly a case where we should step in.

The parties agree that there are three basic methods of evaluating real property: the comparison approach, the income approach and the reproduction cost approach. The comparison approach, as has been noted, focuses on sales of comparable property. The income approach, used when the property is most valuable as a rental property, is not applicable to the instant case as no evidence relevant to this approach was presented. The reproduction cost approach focuses on what it would cost to recreate real property with the same value. In theory, use of either of the two relevant approaches should lead to the same total value. As this may not be the case in practice, one of the duties of the professional appraiser is to weigh any disparate results in order to reach a determination that best reflects the total true value of the property.

Illinois law requires that all real property "shall be valued at its fair cash value, estimated at the price it would bring at a fair voluntary sale." (Ill. Rev. Stat. 1971, ch. 120, par. 501.) Fair cash value is normally associated with fair market value: what the property would bring at a voluntary sale where the owner is ready, willing and able to sell but not compelled to do so and the buyer is likewise ready, willing and able to buy, but not forced to do so. (See, *e.g., People ex rel. McGaughey v. Wilson* (1937), 367 Ill. 494, 12 N.E.2d 5.) This is theoretically an objective standard of valuation; the value of particular property is set by the forces of the marketplace at a given place and time.

■ Heavy reliance upon the reproduction cost method of valuation has been frowned upon by the courts. In *Consolidation Coal Co. v. Property Tax Appeal Board* (1975), 29 Ill. App. 3d 465, 331 N.E.2d 122, the Third District appellate court was faced with a choice between valuing a mine according to its market value and using a reproduction cost method. The

Board had found that there was insufficient evidence of market values and had chosen the replacement cost method. The Board was held to be incorrect and the court stated:

"Market values generally are the standard to be used in valuing property for tax purposes. It is true that there are instances where no market value can be determined, or where a market value is not truly reflective of an item's worth. In such situations, valuation methods such as 'reproduction cost less depreciation' and 'capitalization of income' are helpful. They are not, however, solely determinative of valuation." (*Consolidation Coal Co. v. Property Tax Appeal Board* (1975), 29 Ill. App. 3d 465, 470, 331 N.E.2d 122, 127.)

Generally, reproduction cost should be emphasized only in the context of some special purpose property, which is property "of such nature and applied to such special use that it cannot have a market value * * *." (*City of Chicago v. Farwell* (1918), 286 Ill. 415, 420, 121 N.E. 795, 797.) In other words, reproduction cost should be given great weight only when there is no actual or potential market for the property in question. Moreover, even where special purpose property is involved, the use of reproduction cost is only one proper factor in the valuation process and not the sole, conclusive method of valuation. *People ex rel. Hillison v. Chicago, Burlington & Quincy R.R. Co.* (1961), 22 Ill. 2d 88, 174 N.E.2d 175.

Defendants argue that this Chrysler plant is special purpose property primarily on the basis of its size. Chrysler argues that it is not special purpose property, contending that size alone can never be the basis for classification as special purpose property and claiming that there was in fact a market, albeit a limited one, for plants such as this. Chrysler relies on *In re Great Atlantic & Pacific Tea Co. v. Kiernan* (1977), 42 N.Y.2d 236, 366 N.E.2d 808, in which the New York Court of Appeals was faced with the question of how to value one of the world's largest food processing plants. The local taxing body argued that the reproduction cost method should be used while the taxpayer urged the court to rely on sales of similar properties 500 to 1000 miles away. The court concluded that because reproduction costs should be utilized only in those limited instances in which no other method of valuation would yield a legally and economically realistic value for the property, the evidence as to similar distant sales was sufficient to justify use of the comparison approach. While it did involve a very large plant, the A & P case does not stand for the proposition that size alone cannot make a property so unique in use so as to be classified as a special purpose property, and we will not rule that any particular characteristic cannot make a property unique. The key is

whether the property is in fact so unique as to not be salable, not what factors might or might not make it so unique.

The A & P case does, however, lend support to Chrysler's argument on the existence of comparable sales. Mr. Romito testified that there were numerous sales of extremely large properties. He presented details of what, in his opinion, were the most comparable of these sales. Mr. Kuehnle agreed with Mr. Romito's estimate of what the Chrysler plant would bring if sold as nonspecialty property but rejected Mr. Romito's figures because of his conclusion that the plant was special purpose property and should not be valued on the basis of what it could actually be sold for. The other appraisers, Messrs. Byer, Ferguson, Townsley and Rodge, all made their appraisals without the benefit of any evidence as to comparable sales and, therefore, relied primarily on the reproduction cost (minus depreciation, minus obsolescence) method. While their figures on the actual cost were much lower than those of Messrs. Romito and Kuehnle, their final conclusions as to value were in the same area as Mr. Romito's. However, at least one of these appraisers, Mr. Ferguson, testified that his appraisal was based on "market value. What a willing buyer and a willing seller would arrive at." Thus, CLT, hired by the county, believed that a hypothetical sale of the plant would bring a price similar to the one estimated by Mr. Romito on the basis of the actual sales of other plants.

■ Chrysler also contends that the following language of the Illinois Constitution prohibits the use of the special purpose property classification and a reproduction cost method when every other parcel in the county is valued on the basis of being a general purpose property with a market for sale:

> "Except as otherwise provided in this Section, taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." (Ill. Const. 1970, art. IX, §4(a).)

Although we cannot agree with Chrysler's argument that the use of the reproduction cost method is unconstitutional, this constitutional provision lends strong support to the nonconstitutional argument that the method is improper in the instant case. This constitutional provision is directed primarily at uniformity of assessment levels rather than at uniformity in methods of valuation. Although it is true that by using different methods of valuation a county could change the taxes paid by a particular business just as certainly as it could have done by using a different assessment procedure, our supreme court has recognized the need for using different methods such as reproduction cost where special purpose property is concerned. (See *People ex rel. Hillison v. Chicago, Burlington & Quincy*

*R.R. Co.* (1961), 22 Ill. 2d 88, 174 N.E.2d 175.) We do not find that our supreme court has upheld unconstitutional practices and therefore hold that the use of different valuation methods for different property is not unconstitutional, *per se.*

■ Nonetheless, the constitutional provision highlights the strong public interest in treating taxpayers in a uniform manner. Relying solely on reproduction cost when another method is used to value all other property in a county is a practice that should be tightly limited. Likewise, characterization of one piece of property among 12,000 as special purpose property is something that should be done only as a last resort. When something like a bridge or railroad is involved, reproduction, minus depreciation minus obsolescence may be the only way to obtain a valuation for taxing purposes; it must be used despite its similarity to the prohibited value in use method. If, however, some other method, based on a more objective value to the prospective buyer or renter, is available, that more objective value must be given at least some weight in the valuation process. Here, Mr. Romito has testified that the property could be sold for use as something besides an automobile manufacturing plant for a price in excess of $22,000,000. Messrs. Byer, Ferguson, Townsley and Rodge all produced appraisals within $6,000,000 of that figure and Mr. Ferguson, at least, tied his estimate to the market value of the plant at sale. We hold, therefore, that there was sufficient credible evidence of comparable sales for these sales to be given significant weight as evidence of market value. It follows that the Property Tax Appeal Board's assignment of a valuation herein based solely on a reproduction cost method was incorrect as a matter of law.

We see no need to discuss in detail plaintiff's contention that Mr. Kuehnle's appraisal was also improper because he failed to sufficiently consider the functional obsolescence of the plant. Obviously, if the plant is viewed as a special purpose property usable only as an automobile assembly plant, its functional obsolescence would be far less than if characterized as a general property. Having held the characterization as special purpose property to be improper, it follows that Mr. Kuehnle's conclusion that the plant had no functional obsolescence was also improper.

There remain two issues not connected to the method of valuation but, rather, concerned with whether Chrysler received a fair hearing. Chrysler alleges that the Board improperly disregarded all of the evidence presented at the 1973 hearing and also that the Board improperly gave weight to the parties' unsuccessful attempts to settle the dispute at a compromise amount. Legally these contentions have merit. The evidence submitted by Messrs. Byer, Ferguson, Townsley and Rodge was admitted into the record and, while the Board was under no

obligation to accept any of these appraisals as accurate, they should have been considered. In contrast, discussions concerning settlement should not have been considered as substantive evidence of value by the Board. It is not clear, however, whether the Board was in fact guilty of these particular errors. The Board neither clearly indicated they were considering all of the appraisals nor that they were not considering them. The Board's comments on the unsuccessful settlement attempts are confusing and subject to different interpretations. Since we have already concluded the Board's decision was erroneous on other grounds, it is not necessary for us to embark on any speculative ventures as to what the Board actually did, and we will not do so.

We now turn to the relief requested by Chrysler. It suggests that we require the adoption of Mr. Romito's appraisal of $23,000,000 total value for purposes of calculating assessed valuation. This we will not do. The Board now has before it appraisals done by Messrs. Byer, Ferguson, Rodge, Townsley and Shappert, as well as Mr. Romito's and Mr. Kuehnle's. Obviously this opinion precludes the Board from giving any great weight to Mr. Kuehnle's conclusions, and Mr. Shappert's opinion, being mere speculation as to cost from an unqualified witness, deserves no weight whatsoever. However, it is the Board's role, and not the court's, to weigh the relative validity of the remaining appraisals. The five opinions of qualified appraisers which remain before the Board should be sufficient material for the Board to do this without hearing any additional evidence. That some of these appraisals were based on 1971 and not 1972 value does not render them meaningless, given the testimony that there were no significant improvements that might affect the value made to the property during the year in question. All that we require is that significant weight be given to the comparable sales described by Mr. Romito. We therefore reverse and remand to the State Property Tax Appeal Board for a decision not inconsistent with the above opinion.

Reversed and remanded with directions.

RECHENMACHER and WOODWARD, JJ., concur.