THE BOARD OF REVIEW OF WOODFORD COUNTY, Plaintiff-Appellee, *v.* ILLINOIS PROPERTY TAX APPEAL BOARD *et al.*, Defendants.— (WESTINGHOUSE AIR BRAKE CO., Defendant-Appellant.)

Fourth District    No. 17299

Opinion filed March 11, 1982.

Timothy W. Swain and Donald M. Hartshorn, both of Swain, Johnson & Gard, of Peoria, for appellant.

G. Patrick Riley, State's Attorney, of Eureka (Robert J. Biderman and Keith Vanden Dooren, both of State's Attorneys Appellate Service Commission, of counsel), for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

The case concerns the 1976 real property assessment for tax purposes of land in Woodford County owned by defendant Westinghouse Air Brake Co. (WABCO) and used by it as a testing ground. No dispute exists as to the assessment of the improvements on the land.

The Worth Township assessor assessed the land at $400 per acre. WABCO appealed to plaintiff, the Board of Review of Woodford County, which confirmed the assessment as set forth in a notice mailed to WABCO on July 27, 1977. WABCO then filed a petition for appeal with defendant, the Illinois Property Tax Appeal Board (PTAB) on August 11, 1977. PTAB held a *de novo* hearing (Ill. Rev. Stat. 1979, ch. 120, par. 592.2), and on May 12, 1978, rendered a decision reducing the assessment to $200 per acre.

On June 7, 1978, plaintiff filed a complaint for review under the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*) in the circuit court of Woodford County. On June 16, 1981, that court entered an order finding the PTAB decision to be contrary to the manifest weight of the evidence, reversing the decision and remanding to PTAB with instructions to reassess the lands. WABCO appeals.

The evidence showed the testing-ground tract to consist of about 410 acres of rolling clay sod with some scrubby vegetation. WABCO had rearranged the topography in order to provide for tracks for testing. The property was reachable by a gravel road and a blacktop road. Electrical and water service was available, but it had no railroad connection nor were railroad or trucking facilities nearby. The use of the land was entirely for the testing of equipment and had been zoned for industrial

usage. Some land nearby was zoned for residential purposes and platted. Some houses had been built on this land. Other nearby land was zoned and used for agricultural purposes. The property was not near any substantial industrial development.

At the PTAB *de novo* hearing, Ellwood Ladendorf, plaintiff's supervisor of assessments, testified that its $400 per acre assessment of the WABCO tract had been based upon consideration of the sales price paid for two separate tracts in the area that had been or were to be used by Caterpillar Tractor Co. as test grounds and upon the assessment of a third Caterpillar test ground. A 56.71-acre portion of one tract, lying entirely in Tazewell County had been sold to the State of Illinois for highway purposes in 1972 for $758.24 per acre. Another tract was in Peoria County. It was adjacent to property being used by Caterpillar as a testing ground and was purchased by them in 1975 for $973.12 per acre. The portion of the third Caterpillar test ground located in Woodford County was shown to have been assessed at $400 per acre. Mr. Ladendorf stated that based upon the foregoing data and considering subsequent inflation, he was of an opinion that the WABCO tract had an actual market value of $1,200 per acre. He thus justified the $400-per-acre assessment made by plaintiff. See Ill. Rev. Stat. 1975, ch. 120, par. 501(1).

PTAB rejected both sales. It deemed the Tazewell tract sale to lack comparability because it was for highway purposes, a use for which the WABCO property was not shown to be needed. PTAB also questioned whether the sale was an "arm's length transaction." It rejected substantial use of the Peoria County sale because the proximity of the land to the existing test grounds would have enhanced its value to Caterpillar. PTAB also noted that a $1,200 valuation for WABCO would be inconsistent with the average assessment of vacant land in Woodford County.

PTAB based its $200-per-acre assessment upon a comparison to the assessments of various tracts of land near the WABCO tract, all of which were zoned for agricultural purposes. These tracts ranged from 5 acres to 160 acres in size and had assessed valuations of from $108 to $237 per acre as to the tillable portion and from $95 to $137 per acre as to the untillable portion. The PTAB order stated that the value of the WABCO property would not exceed the value of the surrounding properties and "would not exceed the value of what it could be replaced for." It concluded that those assessments, when multiplied to full value, indicated the cost for WABCO to purchase comparable ground in the area. It stated that the WABCO property was not special in nature and should be "assessed uniformly with surrounding property."

With reference to the *de novo* hearing to be held by PTAB on appeals from boards of review, sections 111.2 and 111.4 of the Revenue Act of 1939, provide in pertinent part:

"* * * Such procedure, to the extent that the Board considers practicable, shall eliminate formal rules of pleading, practice and evidence, and except for any reasonable filing fee determined by the Board, may provide that costs shall be in the discretion of the Board. * * *" (Ill. Rev. Stat. 1979, ch. 120, par. 592.2.)

"* * * The Board shall make a decision in each appeal or case appealed to it, and such decision shall be based upon equity and the weight of evidence and not upon constructive fraud, and shall be binding upon appellant and officials of government. * * *" (Ill. Rev. Stat. 1979, ch. 120, par. 592.4.)

Besides being aware of the informal nature of the proceedings envisioned, the parties are aware that section 11 of the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 274) states: "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." They also realize that ordinarily the decision of such an administrative agency can be set aside on administrative review only when the decision is without substantial foundation in the record or is against the manifest weight of the evidence. (*Farny v. Civil Service Com.* (1973), 10 Ill. App. 3d 80, 293 N.E.2d 450.) However, they also realize that on administrative review from PTAB, a court may reverse an order of assessment based upon "an improper method of valuation" as distinguished from the situation where the court has "a mere difference of opinion" with PTAB "as to the market value of a particular piece of property." *Chrysler Corp. v. Illinois Property Tax Appeal Board* (1979), 69 Ill. App. 3d 207, 211, 387 N.E.2d 351, 354; *Consolidation Coal Co. v. Property Tax Appeal Board* (1975), 29 Ill. App. 3d 465, 331 N.E.2d 122.

The trial court found the PTAB decision to be both based upon an improper method of valuation and contrary to the manifest weight of the evidence. Its opinion indicated that the three recognized methods of valuation of property were the market value, the replacement value and income value approaches. It correctly concluded that the market value approach was proper here and that the other two would have been inappropriate. We agree. As the property was not rented or rentable, the income approach could not be used. The court interpreted the language of the PTAB opinion to indicate that the replacement value approach was used but that the comparable sales of the Caterpillar testing ground properties should have been used as a basis instead. The court concluded that, had they been used, the proper market value approach would have been used. Because of the existence of sales data of property it deemed comparable, and because it thought PTAB gave too little consideration to the zoning classification of the WABCO tract, the trial court also found the PTAB decision contrary to the manifest weight of the evidence.

Although the PTAB order stated the value of the tract would not

exceed that of the surrounding land or that for which it could be replaced, we do not interpret it to have been using the replacement cost method of valuation. That method involves consideration of the cost of replacing improvements on real estate. (*Chicago Land Clearance Com. v. Darrow* (1957), 12 Ill. 2d 365, 146 N.E.2d 1.) Here, the tract involved was not greatly improved, and the comparison discussed by PTAB was not with costs of replacing the improvements but that of acquiring similar land.

■■ In *Will County Board of Review v. Property Tax Appeal Board* (1971), 48 Ill. 2d 513, 272 N.E.2d 32, the PTAB was confronted with the task of determining a proper assessment of property of the Metropolitan Sanitary District of Greater Chicago lying in the bed of the Des Plaines River. There, as here, the PTAB considered, and based its assessment upon, a comparison with assessments of adjacent unimproved tracts being used for various purposes, including farming. The supreme court noted that the PTAB was "not bound by formal rules of evidence" and that the Board of Review's "contention that all evidence of *comparative values* 'requires a recent, bona fide voluntary sale of property similar in locality and character to that in question' is unsound as applied to the assessment of property for taxation." (Emphasis added.) (48 Ill. 2d 513, 519, 272 N.E.2d 32, 36.) Here, as in *Will County Board of Review*, the property whose assessments were compared and the property whose assessment was in question were all the same county and subject to the same multiplier. (Ill. Rev. Stat. 1979, ch. 120, par. 632.) We thus conclude that, here, PTAB was not using a method of replacement cost but one of comparative values and was attempting to find market value in this way. In any event, regardless of the nomenclature given to the method used, under the foregoing precedent, the method was proper.

■■ Neither the rejection by the PTAB of the data concerning the Caterpillar tracts nor the fact that the WABCO tract was zoned for industrial use while the "comparable" properties were zoned otherwise rendered the PTAB decision contrary to the manifest weight of the evidence. The need for one of the Caterpillar tracts for highway purposes detracted from its comparability to the WABCO tract. The tract sold to Caterpillar to enlarge its existing tract was of enhanced value for that reason. All of the Caterpillar tracts had different location values than the WABCO tract. Some evidence indicated that the sole purpose of WABCO obtaining an industrial classification for its tract was so that it would not be prohibited from continuing its activities there and that the tract had no foreseeable use for other industrial purposes. The PTAB could have concluded that the zoning of the tract did not add much to its value. The WABCO assessment was substantially higher than most of the nontillable surrounding agricultural land. Even though reasonable minds could conclude that the assessment of the tract was too low, that would not make the assess-

ment contrary to the manifest weight of the evidence or without substantial support in the record.

■■ Neither the rejection of proper evidence by the administrative agency whose order is under review nor its receipt of improper evidence would, of themselves, be grounds for reversal by a reviewing court.

For the reasons stated we reverse the decision of the circuit court and affirm the decision of the PTAB.

Reversed.

LONDRIGAN and TRAPP, JJ., concur.