ELLSWORTH GRAIN COMPANY, Plaintiff-Appellant, v. THE ILLINOIS PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees.

Fourth District   No. 4—88—0050

Opinion filed July 14, 1988.

Frank Miles, of Hayes, Schneider, Hammer, Miles & Cox, of Bloomington, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney,

Solicitor General, and Karen S. Rosenwinkel, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE SPITZ delivered the opinion of the court:

This appeal is from the administrative review in the circuit court of McLean County affirming a decision of the Illinois Property Tax Appeal Board (PTAB) relating to the real estate tax assessment for the year 1984 of the Ellsworth Grain Elevator facilities in Ellsworth, Illinois. The PTAB affirmed the assessed valuation of said property set by the McLean County Board of Review at $196,764. The only issue on appeal is whether the PTAB improperly applied a method for valuation of the subject property so that the assessed valuation arrived at was against the manifest weight of the evidence.

The subject property consists of five parcels which comprise a grain elevator and storage facility. The principal improvements on the parcels are round and flat grain bins, wooden elevator, dryer, office, and scale. Total capacity is 910,000 bushels.

The 1984 assessed valuation of the property, after applying the township multiplier, was $196,764. The plaintiff claimed the property should have been assessed at $75,000. At the hearing before the PTAB, plaintiff called two witnesses, Wallace Furrow and Gene Williams, and the county offered one, Art Nafziger.

Furrow, himself a grain elevator operator, testified he purchased a grain elevator at Minonk two or three years before the assessment date of the subject property and another grain elevator at Merna about nine months after the assessment date. He paid 10.11 cents per bushel of storage capacity for each of these. The Minonk facility was purchased in 1981 for $100,000 and is rated at 1 million-bushel capacity. The Merna facility, including personal property such as trucks, tractors, and office equipment, was purchased in September of 1985 for $110,000 and is rated at 250,000-bushel capacity. Furrow testified that the price of the personal property should be deducted to determine the real property value. A real estate and personal property breakdown was submitted for the Merna facility with allocation for the equipment and real property. However, nothing was submitted documenting the breakdown of the Minonk facility. Furrow further testified concerning the problems associated with flat storage bins, which comprise approximately one-half of the storage area of the subject property. He stated that flat warehouse bins increase the expense of storage due to the intense labor of getting the grain in and out. Therefore, these are considered less valuable than round bin storage areas. Furrow stated that the subject property is not a mod-

ern operation due to the scattered layout of the dumping and storing system. Newer facilities are built so that there is less handling and hauling of the grain, with most work done by conveyors, lathes, or elevators. He pointed out that because the subject facility requires a great deal of labor to transport the grain from one area to another, the profitability of the operation is reduced and the market value decreased. Finally, Furrow testified that due to the age and wood construction of the elevator house, insurance is extremely expensive, to the point of affecting the saleability of the property.

Williams, one of the owners of Ellsworth Grain Company, testified concerning a financial audit for the 1983 and 1984 business years. He explained in detail the results and findings of the audit, with respect to earnings and changes in the financial position of the subject facility. He pointed out the net income from the subject property of $31,699.89 in 1983 and the loss in income of $157,620.73 in 1984. He testified that the low profit in 1983 was due to a poor growing season, while the 1984 loss of income was due primarily to the government payment in kind (PIK) program, although some could be attributed to an unrelated 40-acre family operation. This document, however, which was prepared for income tax purposes, was unsigned and the preparer was not available for examination by counsel.

Williams further testified concerning other grain storage facilities in the area in competition with his company. He explained the various differences in construction, storage, grain dumps, drying capacities, and overall layouts as compared to the subject property. Finally, Williams testified about numerous attempts to sell the subject property. He stated that, since the spring of 1984 to the time of the hearing, the subject facility has been for sale. During that period of time the asking price started at $320,000 and was reduced to $275,000. Representatives of several prospective buyers viewed the facility and inspected the books and records of the operation. As of the time of the hearing, none indicated any interest in purchasing the subject facility, nor made any offers.

Nafziger, past chairman of the McLean County Board of Review, a certified Illinois assessing official and an officer in a company owning a grain elevator, testified he had visited the subject property. Nafziger admitted sales of elevators are few and far between. As a result, he was unaware of any sales of elevators and had not determined the fair cash value of the subject property, or any of the other properties he compared to the subject property. He did, however, review the age, characteristics, and assessed value of the various types

of improvements and storage facilities in other elevators to demonstrate his belief that the assessed value on the subject property was comparable to those of other elevators.

In its written decision, the PTAB completely recited the evidence and then concluded as follows:

> "After hearing the testimony and reviewing the record, the Property Tax Appeal Board finds that it has jurisdiction over the parties and the subject matter of this appeal. The Board further finds that the financial statement offered by the appellant in support of its income analysis is essentially unsubstantiated. The audit, which was prepared for income tax purposes, was unsigned and the preparer was not present for examination. Thus, the weight and credibility to be given this testimony is significantly diminished due to the lack of documentation. The comparable sales data were also unsubstantiated. The appellant offered no probative evidence to document the comparability of two suggested comparables as compared to the subject property. With respect to the number of attempts to sell the subject property, the Board notes that no listing agreements or documented offerings were submitted into evidence. Only the testimony from the appellant was presented in support of the suggested offerings and rejections of the prospective purchasers. Based on the evidence presented, the Board finds that it can give little weight to the appellant's undocumented and unsupported opinion of value. Through an analysis of the assessment data submitted by the board of review, the Board further finds that the subject property is assessed well within the range of other comparable properties offered for comparison and its assessment is equitable."

On administrative review, after reviewing the record and considering the briefs and arguments of counsel, the circuit court of McLean County determined that the decision of the PTAB was not against the manifest weight of the evidence and the assessment as to plaintiff's property was equitable and supported by the evidence. In affirming the decision of PTAB, the court specifically found that even though Nafziger did not testify as to the fair cash value of the subject property, the PTAB was not required to disregard the evidence, citing *La Grange Bank No. 1713 v. Du Page County Board of Review* (1979), 79 Ill. App. 3d 474, 398 N.E.2d 992. On November 6, 1987, plaintiff filed a post-trial motion to vacate the order of October 14, 1987. Plaintiff's motion was denied December 23, 1987, and plaintiff filed a notice of appeal on January 21, 1988.

■ On administrative review, the agency's findings and conclusions as to questions of fact are considered *prima facie* true and correct. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) Said findings and conclusions can be set aside only if they are against the manifest weight of the evidence. *People ex rel. Thompson v. Property Tax Appeal Board* (1974), 22 Ill. App. 3d 316, 317 N.E.2d 121, *cert. denied* (1975), 422 U.S. 1002, 45 L. Ed. 2d 666, 95 S. Ct. 2623.

Plaintiff contends, in essence, that since the county's witness did not testify as to the fair cash value of the subject property, the PTAB was required to accept plaintiff's witness' testimony to establish the fair cash value of the subject property. According to plaintiff, the failure of the board to accept plaintiff's evidence would leave it with no competent evidence from which the PTAB could conclude as it has, and therefore plaintiff concludes the PTAB must have applied an improper method of valuation.

■ As plaintiff points out, the assessed valuation of a tract or lot must be one-third of the fair cash value. (Ill. Rev. Stat. 1987, ch. 120, par. 501.) Therefore, the primary test for determining proper fair cash value must begin with the fair cash value. If the fair cash value can be established, resort to other methods of valuation is unnecessary.

■ Fair cash value is synonymous with fair market value and is defined as the price a willing buyer would pay a willing seller for the subject property, there being no collusion and neither party being under any compulsion. *Springfield Marine Bank v. Property Tax Appeal Board* (1970), 44 Ill. 2d 428, 256 N.E.2d 334.

■ There are three basic methods of valuation: market comparisons, income analysis, and reproduction costs less depreciation. (*Board of Review v. Illinois Property Tax Appeal Board* (1982), 104 Ill. App. 3d 859, 433 N.E.2d 692.)

> "It is recognized, however, that determination of fair market value may be accomplished in a number of ways, as noted in *People ex rel. Toman v. Pickard* (1941), 377 Ill. 610, 37 N.E. 330. Obviously, the value of land has some relation to its income and expenses. Equally obvious is the fact that a single appraisal is not inevitably reliable. The sale price of property does not necessarily establish its value without further information on the relationship of the buyer and seller and other circumstances. Conversely, the use of some kind of formula based on income of property, while indirect in nature, would not unavoidably fail to reflect fair market value." (*Chicago Title & Trust Co. v. Tully* (1979), 76 Ill. App. 3d 336, 344-45,

395 N.E.2d 42, 49, *cert. denied* (1980), 445 U.S. 964, 64 L. Ed. 2d 240, 100 S. Ct. 1653.)

As this court noted in *Board of Review v. Illinois Property Tax Appeal Board* (1982), 104 Ill. App. 3d 859, 433 N.E.2d 692, the income approach ordinarily should not be used unless the property is rented or rentable. However, it is not how much income the property actually produced which is necessarily determinative, particularly where the property could have produced a greater income. See *In re Application of Pike County Collector* (1985), 133 Ill. App. 3d 142, 478 N.E.2d 626.

The reproduction-cost method of valuation should be given great weight only where there is no actual or potential market for the property in question, and even where there is a "special purpose property" involved, such as an automobile assembly plant, the reproduction cost is only one proper factor to be considered and is not the sole, conclusive valuation method. *Chrysler Corp. v. Illinois Property Tax Appeal Board* (1979), 69 Ill. App. 3d 207, 387 N.E.2d 351.

In utilizing the market-comparison approach, the PTAB is not bound by formal, evidentiary rules. Furthermore, evidence of comparative values does not require a "recent, bona fide voluntary sale of property similar in locality and character" to the subject property. Instead, PTAB can consider and base its assessment on a comparison with assessments of other tracts. (*Will County Board of Review v. Property Tax Appeal Board* (1971), 48 Ill. 2d 513, 272 N.E.2d 32.) And as a practical matter, where comparative values are employed, the similarities and dissimilarities of the properties, as well as the circumstances surrounding the sales of allegedly similar property, must be considered. So it is clear that none of these methods of valuation provide conclusive evidence of value, but are only factors to be considered.

■ In this case, PTAB rightly discounted plaintiff's evidence of a large loss of income in 1984. The person who prepared the document did not sign it and was not available for examination. But more importantly, part of the loss of income was due to an unrelated farming operation. There was no evidence as to how much of the loss was attributable to the subject property. In order to apply an income-valuation method, it would require the PTAB to speculate. Furthermore, plaintiff presented no expert who gave an opinion on valuation based on income or testified concerning the appropriate formula to apply. Plaintiff just said he had a $31,000 profit in 1983, and $157,000 loss in 1984, partly due to an unrelated farming operation. Plaintiff has the burden of showing how these facts affect the property value.

Plaintiff testified the property was for sale at a price starting at $320,000, but dropping to $275,000, and that prospective purchasers viewed the property, but none made an offer. Therefore, plaintiff concludes, the fair market value could not be greater than $275,000. However, if times were hard for grain elevator operators in 1984, as plaintiff testified, then the prospective buyers may not have had the cash or financing available to purchase the subject property even though it may have been a bargain at $320,000. The prospective purchasers could have testified as to their reasons for not buying the property, but that testimony is not in evidence.

Plaintiff suggests that evidence of offers to sell in eminent domain cases is not admissible because they may be artificially inflated, a concern not present in the assessment case. It would seem, however, that such offers are simply not relevant to establish fair cash value, whether for eminent domain or tax assessment cases. Fair cash value can only be established where there is an offer, *and* an acceptance, in a *bona fide* transaction.

Likewise, the comparability of value of the Merna and Minonk elevators has not been established. There was testimony as to the comparability of the physical facilities. However, there was very little more than testimony of the price paid as to the circumstances surrounding Furrow's purchase of these facilities. Were these elevators purchased from a receivership, or a bankruptcy trustee, or from the executor of an estate, or to satisfy a Federal tax lien? In short, plaintiff failed to prove the prices paid for the Merna and Minonk elevators reflect the fair cash values for these properties, to wit: the price was fairly arrived at by and between a willing buyer and a willing seller, without collusion, and neither party being under compulsion.

■ On the other hand, although the county also failed to provide an estimate of the fair cash value of the subject property, the county's witness did testify as to assessments of comparable properties, which the Illinois Supreme Court has specifically found to be a permissible method of showing fair cash value. *Will County Board of Review v. Property Tax Appeal Board* (1971), 48 Ill. 2d 513, 272 N.E.2d 32.

■ Plaintiff challenges the cases relied upon by defendant to support this point. In *La Grange Bank No. 1713 v. Du Page County Board of Review* (1979), 79 Ill. App. 3d 474, 398 N.E.2d 992, the court said the assessment was not invalidated merely because the assessor failed to testify as to fair market value *since his testimony as to the value of the comparable properties supported the PTAB's con-*

*clusion.* In the case at bar, Nafziger did not testify as to the fair market value of the properties he stated were comparable.

Plaintiff complains that the *Will County Board* case involves the challenge of an assessment based on a comparison of the assessments of surrounding property, rather than a dispute as to the amount of the fair cash value of the subject property. Plaintiff makes a similar argument against the use of the *Woodford County* case, which relies on the *Will County Board* case. Based on the facts recited in the opinions, plaintiff is not correct about the *Woodford County* case. If plaintiff was correct about *Woodford County*, there would have been no need for this court to have extensively discussed formulas for determining fair cash value. The comparisons discussed in *Woodford County* are for the purpose of establishing fair cash value. Therefore, plaintiff's challenge to this statement of law is without merit.

The conclusions of the PTAB cannot be said to be against the manifest weight of the evidence. Accordingly, the judgment of the circuit court of McLean County is affirmed.

Affirmed.

GREEN, P.J., and McCULLOUGH, J., concur.